## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PATRICK RYAN JOHNSON**                              **CIVIL ACTION**

**VERSUS**                                                      **NO. 21-1698**

**TANGIPAHOA PARISH JAIL, ET AL.**               **SECTION: "B"(1)**

### PARTIAL REPORT AND RECOMMENDATION

Plaintiff, Patrick Ryan Johnson, a state pretrial detainee, filed this *pro se* federal civil action pursuant to 42 U.S.C. § 1983,[1] claiming that the conditions of his confinement were unconstitutional in numerous respects.  In his original complaint, he named the "Tangipahoa Parish Jail" as the sole defendant.[2]  The Court then notified him that the jail was not a proper defendant and afforded him an opportunity to file an amended complaint.[3]  He thereafter filed an amended complaint naming Sheriff Daniel Edwards and Warden Heath Martin as defendants.[4]

### I.  Court's Obligation to Screen the Complaint

Plaintiff filed this action *in forma pauperis*.  Concerning such actions, federal law requires:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> > (i)        is frivolous or malicious;

---

[1] In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.  Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

[2] Rec. Doc. 1.

[3] Rec. Doc. 4.

[4] Rec. Doc. 5.

      (ii)    fails to state a claim on which relief may be granted; or

      (iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because plaintiff is incarcerated, his complaint is also subject to the screening provisions of 28 U.S.C. § 1915A.   That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).[5]  Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact."  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

---

[5] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." _In re_ Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (footnote, citation, and quotation marks omitted). The United States Supreme Court has held:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## II. Plaintiff's Factual Allegations

To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing in this matter via Zoom on November 15, 2021. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the _pro se_ applicant. Id.

Based on the complaint, as amended, and the Spears hearing testimony, the Court finds that plaintiff is making the following factual allegations in support of his legal claims:

Plaintiff stated, "[w]e get uncooked food regularly."[6]  When asked what he meant by "uncooked food," he testified that he was "mostly" referring to "uncooked rice and beans which will cause intestinal issues and make you sick"; however, he also noted that he received raw sausage on one occasion, and a raw "boiled" egg on another.  He alleged that such food sometimes made him ill with intestinal issues, but he conceded that he had not sought medical attention on those occasions.

Plaintiff also stated, "[m]edical is negligent."[7]  He testified that he filled out medical requests which were not answered for weeks or "at all."  For example, he asked for optical care for astigmatism which causes him to experience blurry vision in his left eye, but he was told that the jail does not provide optical care.  When asked to identify his most serious medical issue that went unaddressed, he testified that he once had "respiratory issues" and was "coughing up blood." Although he received no medical attention for that ailment, he recovered "after a couple of weeks."

Plaintiff complained that the jail's COVID precautions were "subpar."[8]  For example, he noted that the jail provided only KN95 masks rather than medical-grade masks and the quarantine restrictions were not rigidly observed.

Plaintiff complained that the jail has refused to provide inmates with "usable writing instruments."[9]  For example, he noted that although pre-sharpened pencils are available, inmates have no way to resharpen them when necessary.  Although the jail staff claims that inmates are able to resharpen pencils in the law library, he alleged that is untrue because the law library is inaccessible.

---

[6] Rec. Doc. 5, p. 9.
[7] Id.
[8] Id.
[9] Id.

Plaintiff alleged that "[w]e do not get let outside."[10]  He conceded that he had access to indoor areas where there was sufficient room to exercise.

Plaintiff also alleged that haircuts were not routinely provided and that he had gone many months without one.[11]  When asked to explain his neat appearance as evident during the Zoom <u>Spears</u> hearing, he testified that he was able to purchase and use a product called "Magic Shave" from the commissary.  However, he stated that "Magic Shave" can cause chemical burns in individuals such as himself with light skin, but he must either use it or "look shaggy."

Plaintiff complained that "[t]here were several times I was not allowed to shower for weeks at a time."[12]  When he would ask for a shower, the jail officials responded that they were "too busy."  He explained that this occurred when he was housed in Cell E-14 "up front" and also when he was in "Max"; however, once he was moved into the jail's general population, he then had access to a shower on his dorm.

Plaintiff alleged that inmates receive "[n]o response to grievances and no action when they respond."[13]

Plaintiff also alleged that he "[h]ad to sleep on the floor for weeks."[14]  He testified that this lasted for approximately two weeks because sufficient beds were not available.  During that time, he was given a mat to sleep on.

Plaintiff stated that was "[d]enied access to law library."[15]  He testified that he wanted access to the law library both for his criminal case and the instant civil case.  He acknowledged

---

[10] <u>Id.</u>
[11] <u>Id.</u>
[12] <u>Id.</u>
[13] <u>Id.</u>
[14] <u>Id.</u>
[15] <u>Id.</u>

that he has counsel, Summer Vicknair, representing him in his criminal case, but he wants to do his own research because he questions her performance.

Plaintiff alleged that jail commissary is "overpriced."[16]

Plaintiff also alleged that "[f]or over a year my dorm's windows were welded shut and we got zero sunlight,"[17] but he acknowledged that the dorm had interior fluorescent lighting during that time.  He conceded that now has access to sunlight because the windows were repaired during a jail renovation.

Plaintiff stated that he "was told to sleep on glass."[18]  He explained that when he was in Cell E-14, he was taken out of the cell so that a lightbulb could be changed.  When he was permitted to return to the cell, his bunk was "covered in glass," presumably from a broken lightbulb.  He asked a guard if he could "get laundry and a broom" to remedy the situation, and he was told just to sleep on the glass.  He testified that occurred about "a year and a half ago."

Plaintiff complained that "[t]hey single out my dorm for abuse."[19]  He explained that he is housed in the "sex offender dorm," and that the jail trustees do not provide an adequate number of food trays for that dorm, resulting in inmates having to either fight over trays or go hungry.

Plaintiff alleged that he reported sexual abuse and was ignored.[20]  Specifically, he testified that two inmates exposed their genitals to him.  He filed a grievance and was told it was not a grievable matter.

Plaintiff also alleged that inmates "are not allowed books and our families are lied to and told we have books on tablets.  We do not have tablets."[21]  He testified that there are no tablets;

---

[16] Id.
[17] Id.
[18] Id. at p. 10.
[19] Id.
[20] Id.
[21] Id.

although the dorm has an electronic kiosk, it does not include access to books.  He explained that inmates once had access to books, but that was stopped, supposedly because the inmates were "tearing them up."  Inmates are not permitted to receive books from outside the facility.

Plaintiff complained that "[t]hey will not replace worn slippers, sheets, mats, clothes, blankets, [and] towels."[22]

Plaintiff similarly complained that "[w]e are not given toilet paper, soap, toothbrushes, or toothpaste regularly."[23]  He testified that inmates are normally given a limited supply of those items once per week, but some weeks are occasionally missed.  He acknowledged that those items are available for purchase through the jail commissary.

Plaintiff alleged that "[g]uards walk around with knives."[24]  At the Spears hearing, he testified that he was actually referring to box cutters and utility knives carried by the guards.

Plaintiff also alleged that there is no regular laundry service.  He testified that laundry service is supposed to be available at least once per week, but inmates sometimes go approximately one month without it.  He conceded that he has access to soap and a sink to handwash items.

Plaintiff testified that he named Sheriff Daniel Edwards and Warden Heath Martin as defendants simply because they run the Tangipahoa Parish Jail.  He acknowledged that they did not play any personal role in any of the foregoing events.

### III.  Analysis

Because plaintiff is a pretrial detainee, his claims arise under the Fourteenth Amendment. See Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996) ("The constitutional rights of a pretrial detainee … flow from both the procedural and substantive due process guarantees of the

---

[22] Id.
[23] Id.
[24] Id.

Fourteenth Amendment.").  "Pretrial detainees may bring two distinct legal challenges under the due process clause of the Fourteenth Amendment.  They may attack 'conditions of confinement' or 'episodic acts or omissions' of an individual official."  Childers v. San Saba County, 714 F. App'x 384, 386 (5th Cir. 2018).  "There is no rule barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately."  Martinez v. City of North Richland Hills, 846 F. App'x 238, 242 (5th Cir. 2021).

It is not always a simple to task to ascertain under which of those two theories an inmate is proceeding, and, here, plaintiff has not specified.  Therefore, out of an abundance of caution, the undersigned will consider his claims under both theories.

### A.  "Episodic Acts or Omissions" Analysis

Given the defendants he has named and the allegations he has made, if plaintiff is attempting to assert his claims under the "episodic acts or omissions" theory, they clearly fall short.

"An episodic-acts-or-omissions claim … faults specific jail officials for their acts or omissions." Martinez, 846 F. App'x at 242 (quotation marks omitted).  But, here, plaintiff has not sued the specific jail officials who allegedly violated his rights through their own acts or omissions.  Rather, he has sued only "Tangipahoa Parish Jail," Sheriff Daniel Edwards, and Warden Heath Martin.

The "Tangipahoa Parish Jail" is not a proper defendant with respect to any type of § 1983 claim.  The jail is simply a building, and, as such, is an improper defendant in a § 1983 action.  See Robinson v. Pinion, Civ. Action No. 05-6364, 2006 WL 2710443, at *3 (E.D. La. Sept. 19, 2006) ("[T]he Court finds that the claim against the 'Tangipahoa Parish Jail,' which plaintiff has named as a separate defendant, should be dismissed as frivolous and for failing to state a claim upon which relief may be granted.  A detention facility is merely a building, not a 'person' subject to suit under

42 U.S.C. § 1983."); accord Porter v. St. Bernard Parish Jail, Civ. Action No. 15-5716, 2015 WL 10323883, at *1 n.1 (E.D. La. Dec. 21, 2015), adopted, 2016 WL 687655 (E.D. La. Feb. 19, 2016); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *5 (E.D. La. Nov. 13, 2013).

On the other hand, Sheriff Daniel Edwards and Warden Heath Martin obviously are "persons" and, therefore, **could** properly be defendants with respect to § 1983 "episodic acts or omissions" claims – but they are not in this particular case. That is because "[p]ersonal involvement is an essential element of a civil rights cause of action," Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983), and, as noted, plaintiff acknowledged at the Spears hearing that neither Sheriff Edwards nor Warden Martin played a personal role in the events on which these claims are based. Absent such personal involvement, the mere fact that Sheriff Edwards and Warden Martin occupy supervisory positions at the jail does not, in and of itself, suffice to serve as a basis for liability. See Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) ("In a § 1983 suit ... – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Sanchez v. Young County, 866 F.3d 274, 281 (5th Cir. 2017) ("Supervisors cannot be held liable for constitutional violations committed within the jail if they had no personal involvement.").

Therefore, to the extent that plaintiff intended any of his claims as "episodic acts or omissions" claims, he has failed to name a proper defendant, despite being given an opportunity to do so.[25]

---

[25] When plaintiff was afforded the opportunity to file an amended complaint, he was expressly instructed:

### B.  "Conditions of Confinement" Analysis

To the extent that plaintiff intended any of his claims as "conditions of confinement" claims, such claims are "challenge[s] to general conditions, practices, rules, or restrictions of pretrial confinement."  Estate of Henson v. Wichita County, 795 F.3d 456, 463 (5th Cir. 2015) (quotation marks omitted).  Moreover, such claims are properly asserted only against a defendant in his official capacity.  See Nagle v. Gusman, Civ. Action No. 12-1910, 2016 WL 768588, at *5 (E.D. La. Feb. 26, 2016) (Vance, J.) ("The Fifth Circuit has at least suggested that condition-of-confinement claims are cognizable against individual actors only in their official capacities."); accord Zavala v. City of Baton Rouge/Parish of East Baton Rouge, Civ. Action No. 17-656, 2018 WL 4517461, at *9 (M.D. La. Sept. 20, 2018) (deGravelles, J.).

With respect to such claims, the United States Fifth Circuit Court of Appeals has explained:

> If the plaintiff has properly stated a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because … intent may be inferred from the decision to expose a detainee to an unconstitutional condition.  A condition is usually the manifestation of an explicit policy or restriction:  the number of bunks per cell, mail privileges, disciplinary segregation, etc.  In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by jail officials, to prove an intended condition or practice.  Proving a pattern is a heavy burden, one that has rarely been met in our caselaw.  Further, to constitute impermissible punishment, the condition must be one that is arbitrary or purposeless or, put differently, not reasonably related to a legitimate goal.

---

The amended complaint must include the following information: (1) the name of each individual plaintiff seeks to sue; (2) a proper service address for each such individual; and (3) a short and plain statement of each claim plaintiff wishes to assert against each such individual.

Rec. Doc. 4.

Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citations and quotation marks

omitted).  The Fifth Circuit has expressly cautioned:

> [I]solated examples of illness, injury, or even death, standing alone, cannot prove
> that conditions of confinement are constitutionally inadequate.  To prevail on a
> claim of unconstitutional conditions of confinement, a plaintiff must show: (1) a
> rule or restriction or the existence of an identifiable intended condition or practice
> or that the jail official's acts or omissions were sufficiently extended or pervasive;
> (2) which was not reasonably related to a legitimate governmental objective; and
> (3) which caused the violation of the inmate's constitutional rights.

Cadena v. El Paso County, 946 F.3d 717, 727 (5th Cir. 2020) (citation, quotation marks, brackets,

and ellipses omitted).

> Simply put:

> [I]n a true jail conditions case, the plaintiff has shown **either** an official policy,
> intentionally adopted, **or** a series of acts or omissions sufficiently extended or
> pervasive, or otherwise typical of extended or pervasive misconduct by other
> officials, to prove an intended condition.

Shepherd, 591 F.3d at 455 (emphasis added; quotation marks and ellipsis omitted).

In the instant case, plaintiff has not alleged that any of the purportedly unconstitutional

conditions resulted from "an official policy, intentionally adopted," much less pointed to any such

policy.  Therefore, to prevail, he must show a pervasive or extended pattern of misconduct with

respect to each claim.  To make that showing, a plaintiff's evidence must be "exhaustive or

authoritative" – "[a] few isolated events do not amount to a condition of confinement."  Cadena,

946 F.3d at 728.

Accordingly, the Court can quickly weed out the following claims, because plaintiff has

failed to properly allege that they resulted from a pervasive or extended pattern of misconduct:

1.    The claim concerning the food.  Although plaintiff alleged that inmates were served

"uncooked" food "regularly," that allegation is conclusory and lacks the specificity necessary to

establish a pervasive pattern of misconduct.  In fact, he pointed to only two specific instances,

namely that he was served "raw" sausage on one occasion and raw "boiled" egg on another. Even if, as seems unlikely, those items were in fact served raw, as opposed to simply undercooked, two instances are insufficient to establish a pervasive pattern.

2.     The claim concerning the medical care. With respect to this claim, plaintiff points to only two isolated instances: (a) the failure to provide him optical care for astigmatism and (b) the failure to provide him with medical care for a respiratory issue from which he recovered within a couple of weeks even without treatment. Again, two instances are insufficient to establish a pervasive pattern. Second, in any event, plaintiff's allegation is that the medical care is "negligent."[26] But it is clear that "negligent medical care does not constitute a valid section 1983 claim." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

3.     The claim concerning the showers. This, too, was not a pervasive problem; plaintiff alleges only that it happened to him "several times." Such sporadic instances of purported misconduct fail to state a "conditions of confinement" claim.

4.     The claim concerning the failure to provide him with assistance for a broken lightbulb in his bunk. This happened once; so, again, not a pattern.

5.     The claim of uninvestigated sexual abuse. This claim arises from the purported failure to investigate plaintiff's complaint that two inmates exposed their genitals to him. Again, that alleges an isolated occurrence, not a pervasive pattern.

---

[26] Rec. Doc. 5, p. 9.

The Court can also easily dispose of the following claims because, even if plaintiff is deemed to have alleged a pervasive pattern, there simply was no underlying constitutional violation:

1.    Plaintiff's claim that the jail's COVID precautions were "subpar."[27]  It is true that penal officials have a duty to provide a pretrial detainee in their custody "with basic human needs, including ... protection from harm, during [his] confinement."  Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996).  It is likewise true that "[t]here is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates." Valentine v. Collier, 956 F.3d 797, 801 (5th Cir. 2020).  Nevertheless, it does not follow that penal officials violate the Constitution if they fail to take every possible precaution against COVID, employ the best possible practices, or obtain the best available protective equipment.  On the contrary, the United States Fifth Circuit Court of Appeals has held that a facility's failure even to comply with CDC guidelines does not rise to the level of a constitutional violation – and further held that the Constitution does not require penal officials to implement "long-term changes" or sanitize facilities to "the maximum extent required to avoid the spread of COVID-19."  Valentine v. Collier, 978 F.3d 154, 164 (5th Cir. 2020).

Further, here, plaintiff has identified only two respects in which the precautions were deficient:  (a) the provision of KN95 masks rather than medical-grade masks and (b) the failure to rigidly observe quarantine restrictions.  However, even if the precautions were less than optimal in those respects, there was no constitutional violation.

While medical-grade masks are perhaps the "gold standard" in personal protective equipment, the Constitution simply does not require that inmates be provided with the best

---

[27] Rec. Doc. 5, p. 9.

protection money can buy.  See, e.g., Blake v. Tanner, No. 3:20-cv-1250, 2020 WL 3260091, at

*3 (N.D. Tex. May 20, 2020) ("[T]he use of medical grade PPE (such as N-95 respirators) is not

required by the CDC – or the Constitution."), adopted, 2020 WL 3259369 (N.D. Tex. June 16,

2020).  And the fact that an inmate would prefer a medical-grade mask does not mean that the

failure to provide him with one rises to the level of a constitutional violation.  See, e.g., Bodnar v.

Lake County Jail, No. 2:20-CV-157, 2020 WL 1940742, at *3 (N.D. Ind. Apr. 22, 2020) ("[W]hile

[plaintiff] may prefer medical grade equipment to better protect himself, the decision to provide

him with a lesser quality mask is consistent with current guidelines and in no way runs afoul of

the Constitution."); accord Shokr v. LeBlanc, Civ. Action No. 20-488, 2020 WL 8093228, at *5

(M.D. La. Dec. 14, 2020) ("[T]hough [plaintiff] complains that the masks provided are unapproved

by the CDC, this argument is not persuasive.  The CDC has only recommended cloth face masks,

and other courts have dismissed as frivolous complaints regarding the quality of masks

provided."), adopted, 2021 WL 53175 (M.D. La. Jan. 6, 2021).

Likewise, while a rigid quarantine procedure may be optimal, it is neither practical nor

constitutionally required.  Rigid quarantine restrictions are notoriously difficult to implement and

maintain in jails, which are by their very nature communal settings.  For example, as one United

States District Judge noted in rejecting a similar claim:

> [Plaintiff] complains that the quarantine is insufficient to protect him from COVID-
> 19 because staff and other inmates are moving about the housing unit constantly.
> New inmates have allegedly been brought into the unit without first being
> quarantined or tested for COVID-19.  Staff must move throughout the unit to ensure
> the safety of inmates and meet their basic needs.  While this increases the risk of
> exposure to both staff and inmates, it is unavoidable.  The CDC has recommended
> that new arrivals be screened for COVID-19 and, where possible, held in a separate
> space for fourteen days before being placed with other inmates.
> https://www.cdc.gov/coronavirus/2019-ncov/community/correction-
> detention/guidance-correctional-detention.html (last visited Apr. 17, 2020) ("If
> possible, consider quarantining all new intakes for 14 days before they enter the
> facility's general population (SEPARATELY from other individuals who are

14

quarantined due to contact with a COVID-19 case).").  While comingling new intakes with other inmates may not be the ideal practice (and may not even be occurring at the Lake County Jail), the challenges of managing this situation in a correctional setting are astronomical, and nothing in [plaintiff]'s complaint suggests that the defendants acted unreasonably.

Bodnar v. Lake County Jail, No. 2:20-CV-157, 2020 WL 1940742, at *3 (N.D. Ind. Apr. 22, 2020) (citation omitted).  Therefore, the fact that jail officials failed to achieve perfect compliance with respect to such an elusive goal is not evidence of a constitutional violation.  See Snyder v. Bergeron, Civ. Action No. 20-2158, 2021 WL 2822376, at *8 (E.D. La. July 7, 2021) ("Obviously, social distancing is particularly difficult to accomplish in penal institutions, and the mere fact that it was not achieved is an insufficient basis for finding a constitutional violation.").

2.    The claim involving the lack of outside recreation.  "[N]either prisoners nor pretrial detainees have a constitutional right to outdoor exercise or recreation." Callicutt v. Panola County Jail, No. 98-60193, 1999 WL 1095663, at *3 (5th Cir. Nov. 4, 1999) (citing Jones v. Diamond, 594 F.2d 997, 1012-13 (5th Cir. 1979)); accord Green v. Guidry, Civ. Action No. 19-12052, 2019 WL 5540959, at *5 (E.D. La. Oct. 4, 2019) ("The jurisprudence reflects that even severe restrictions on or complete denials of outdoor recreation have been found to be constitutional."), adopted, 2019 WL 5538065 (E.D. La. Oct. 25, 2019).

3.    The claim that haircuts are not regularly provided to inmates.  "[T]here is no clearly established constitutional right to a haircut."  Simmons v. Lanigan, Civ. Action No. 16-4215, 2021 WL 1712577, at *6 (D.N.J. Apr. 30, 2021) (quotation marks and brackets omitted); accord Williams v. Delaware County Board of Prison Inspectors, Civ. Action No. 17-CV-4348, 2018 WL 3235788, at *8 (E.D. Pa. July 2, 2018).  An allegation that an inmate has been denied a haircut "falls far short" of what is required to state a constitutional claim.  Stevenson v. Lubbock County Sheriff's Department, No. 93-1532, 1993 WL 347322, at *1 (5th Cir. Aug. 20, 1993).  "Conditions

of confinement that merely cause discomfort or inconvenience are not constitutionally proscribed." Id.

4.    The claim that the grievance procedure is ineffective.  An inmate has no constitutional right to an adequate and effective grievance procedure or to have his complaints investigated and resolved to his satisfaction.  Bonneville v. Basse, 536 F. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 F. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005).

5.    The claim concerning the fact that there was an insufficient number of available bunks.  Plaintiff conceded that on those occasions during which bunks were unavailable, he was provided with a mat to be used on the floor.  That sufficed, because "[t]here is no authority holding that a prisoner has a constitutional right to sleep in an elevated bed."  Gaines v. McDonald, 577 F. App'x 335 (5th Cir. 2014); accord Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986); Walcott v. Terrebonne Parish Consolidated Government, Civ. Action No. 17-1125, 2017 WL 6374640, at *6 (E.D. La. Sept. 22, 2017), adopted, 2017 WL 6344148 (E.D. La. Dec. 12, 2017), appeal dismissed, No. 18-30138, 2018 WL 3868746 (5th Cir. Apr. 11, 2018); Williams v. Gusman, Civ. Action No. 15-96, 2015 WL 5970424, at *4 (E.D. La. Oct. 14, 2015).

6.    The claim involving the lack of access to a law library.  It is true that inmates have a constitutional right of access to the courts which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Bounds v. Smith, 430 U.S. 817, 828 (1977).  That right extends to pretrial detainees.  See United States v. Moya-Gomez, 860 F.2d 706, 743 (7th Cir. 1988); Wetzel v. Strain, Civ. Action No. 09-7048, 2010 WL 744993, at *3 (E.D.

La. Feb. 26, 2010); Kirkpatrick v. Daugherty, Civil Action No. 6:05cv461, 2006 WL 2401108, at *4 (E.D. Tex. Aug. 17, 2006). However, that right has not been violated here.

With respect to his criminal case, plaintiff conceded that he has counsel representing him in that matter. "A criminal defendant cannot complain that he was denied access to the courts while represented by counsel." Ashcraft v. Cameron County, No. 97-41219, 1998 WL 611201, at *3 (5th Cir. Aug. 17, 1998); accord Ford v. Foti, No. 94-30614, 1995 WL 241811, at *3 (5th Cir. Apr. 14, 1995) ("A criminal defendant who is represented by counsel has meaningful access to the courts vis-a-vis the criminal action pending against him."); Childs v. Scott, No. 94-60723, 1995 WL 153057, at *1 (5th Cir. Mar. 22, 1995) ("If a criminal defendant is represented by counsel, he has constitutionally sufficient access to the courts."); Webb v. Havins, No. 93-1452, 1994 WL 286151, at *3 (5th Cir. June 13, 1994); Crockett v. Carpenter, No. 93-1480, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994). "Because plaintiff is currently represented, he has no valid access-to-courts claim with respect to his criminal proceeding, even if he would like to 'assist' his attorney." Boyd v. Nowack, Civ. Action No. 09-7639, 2010 WL 892995, at *3 (E.D. La. Mar. 11, 2010). "It is well established ... that a criminal defendant has no constitutional right to hybrid representation ...." Prather v. Anderson, No. Civ. A. H-05-2964, 2005 WL 2277528, at *2 (S.D. Tex. Aug. 31, 2005).

With respect to this civil case, plaintiff's right of access to the courts is cognizable only if the alleged deprivation resulted in actual prejudice to him in the litigation. See, e.g., Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) ("[A]n inmate alleging denial of access to the courts must demonstrate an actual injury stemming from defendants' unconstitutional conduct."); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998) ("[B]efore a prisoner may prevail on a claim that his constitutional right of access

to the courts was violated, he must demonstrate that his position as a litigant was prejudiced by his denial of access to the courts." (quotation marks omitted)); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993).  In the instant case, it has not.  Despite not having access to a law library, plaintiff has been able to file his claims in this Court and to explain and supplement them in the Spears hearing.  Because he "has not alleged that he was actually denied access to the court or that any pending litigation was prejudiced, ... [he] therefore has not stated a cognizable § 1983 claim." Clark v. Foti, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995).

7.    The claim that the commissary is overpriced.    "[I]nmates do not have a constitutional right to purchase commissary items at low prices."  Boyd v. Nowack, Civ. Action No. 09-7639, 2010 WL 892995, at *4 (E.D. La. Mar. 11, 2010); accord French v. Butterworth, 614 F.2d 23, 25 (1st Cir. 1980) ("[T]here is simply no legal basis for a demand that inmates be offered items for purchase at or near cost."); Sargent v. Larpenter, Civ. Action No. 16-08734, 2017 WL 550594, at *4 (E.D. La. Feb. 10, 2017) ("[P]rison officials have no constitutional duty to make items available for purchase from a prison commissary nor do inmates have a constitutionally protected liberty interest in purchasing goods from the commissary at the lowest possible price.").

8.    The claim that there was a period of time that he was deprived of access to sunlight because the windows were welded shut.  Because plaintiff concedes that artificial light was available during that period, and because such artificial light sufficed, that claim fails.  See, e.g., Proverb v. O'Mara, Civil No. 08-cv-431, 2009 WL 368617, at *17 (D.N.H. Feb. 13, 2009) ("While courts have held that the constitutional requirement that an inmate be provided with adequate shelter includes the provision of adequate lighting, I can find no legal authority for the proposition that light must be natural light to be considered constitutionally adequate." (citation omitted)), adopted, 2009 WL 1292126 (D.N.H. May 6, 2009); accord Burns v. Simmons, No. 1:16cv1246,

2017 WL 4173719, at *2 (E.D. Va. Mar. 21, 2017) ("The fact … that the window of [plaintiff's] cell was 'laminated' such that 'no view of the outside or view or feel of the sunlight were possible/permitted' does not violate contemporary notions of decency."); <u>Fletcher v. Martin</u>, Civ. Action No. 88-1452, 1988 WL 101551, at *2 (E.D. La. Sept. 21, 1988) ("Additional allegations presented by plaintiff are that he is not provided … windows in the prison facility so as to allow fresh air and sunlight in. …  These conditions although restrictive are not excessive or grossly severe and they fail to shock the conscience.").

9.    The claim regarding the failure to "replace worn slippers, sheets, mats, clothes, blankets, [and] towels."[28]  Clearly, jail officials have an obligation to provide for their inmate's "basic human needs."  <u>Hare v. City of Corinth</u>, 74 F.3d 633, 639 (5th Cir. 1996).  That specifically includes clothing, <u>id.</u>, and, for the purposes of this decision, the Court will simply assume that it also applies to the other similar items mentioned by plaintiff.  Nevertheless, plaintiff does not allege that he was denied such items or even that the items provided were unusable.  Rather, his complaint is only that they were not sufficiently new.  That is not a preference jail officials must accommodate.  As long as the items are serviceable, and plaintiff has not alleged that they are not, there is no constitutional violation.

10.    The claim regarding hygiene supplies.  Although plaintiff complained "[w]e are not given toilet paper, soap, toothbrushes, or toothpaste regularly,"[29] he acknowledged that those items are available for purchase through the jail commissary.  The Constitution does not require that free hygiene supplies be provided to non-indigent inmates, and plaintiff has not alleged either that he lacked the funds necessary to purchase those items[30] or that he was personally ever denied

---

[28] Rec. Doc. 5, p. 10.
[29] <u>Id.</u>
[30] To the contrary, plaintiff's pauper application indicated that he had a balance of $207.30 in his jail account and had monthly deposits into that account of approximately $100.  Rev. Doc. 2, p. 2.

requested hygiene items due to lack of funds.  Accordingly, he has not stated an actionable constitutional claim.  See Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *10 (E.D. La. May 11, 2010).  He does not have standing to bring such claims on behalf of other inmates who may be less fortunate.  Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *3 n.7 (E.D. La. Nov. 28, 2003)

11.     The claim that the guards carry utility knives and box cutters.  An inmate "has no constitutional right not to be exposed to an armed corrections officer."  Jackson v. Griffith, No. 1:93-CV-424, 1995 WL 21939, at *3 (E.D. Tex. Jan. 10, 1995), adopted, 1995 WL 313655 (E.D. Tex. Feb. 8, 1995).

12.     The claim regarding the irregular laundry service.  Because plaintiff has not alleged any facts "to suggest that the laundry system caused him any harm rather than mere personal dissatisfaction with the frequency of the service, his claim is not actionable."  Pitt v. Weaver, Civ. Action No. 15-360, 2015 WL 2452348, at *5 (E.D. La. May 21, 2015) (quotation marks omitted); see also Harrison v. Deen, Civ. Action No. 06-cv-1198, 2008 WL 5435339, at *4 (W.D. La. Dec. 31, 2008).

Although the foregoing claims should be dismissed, the Court is not currently able to make a similar determination with respect to plaintiff's three remaining claims due to a lack of information and context:

1.     The claim regarding the lack of "usable writing instruments."[31]  Generally, inmates have a right to engage in correspondence, and those rights can be violated by policies that deprive them of the supplies necessary to conduct such correspondence.  See Fountain v. Thaler, 629 F. App'x 592, 595 (5th Cir. 2015).  At this juncture, the reason for the jail's policy has not been

_____

[31] Rec. Doc. 5, p. 9.

proffered, and so the Court is unable to determine whether the policy actually impermissibly infringes on that First Amendment right. Therefore, this claim should be allowed to proceed pending further development.

2.    The claim that jail trustees are permitted to single out the inmates of the "sex offender dorm" for abuse. State penal officials owe a duty to provide pretrial detainees "with basic human needs, including … protection from harm, during their confinement …." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). Although "jail official's negligent failure to provide … protection from harm" is not actionable under § 1983, the same obviously cannot be said of an official's pattern or practice of intentionally turning a blind eye to trustees performing their jail duties in a manner which exposes their fellow inmates to serious harm. Here, plaintiff alleges that trustees are allowed to purposely provide the "sex offender dorm" with an insufficient number of food trays in order to encourage fights among the inmates. Although plaintiff may face significant hurdles in proving such a claim, the claim itself is sufficiently alleged and is not facially frivolous. Therefore, it, too, should be allowed to proceed pending further development.

3.    The claim concerning the denial of books. "A prison's refusal to allow an inmate access to a book presents a substantial First Amendment issue. Freedom of speech is not merely freedom to speak; it is also freedom to read. Forbidding someone the right to read shuts him out of the marketplace of ideas and opinions, which is what the Free Speech Clause protects." Munson v. Gaetz, 673 F.3d 630, 633 (7th Cir. 2012). Accordingly, pretrial detainees such as plaintiff have a First Amendment right of access to reading materials not inconsistent with prison safety or other legitimate penal concerns. Mann v. Smith, 796 F.2d 79 (5th Cir. 1986). Therefore, "challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the

prisoner has been committed in accordance with due process of law." Pell v. Procunier, 417 U.S. 817, 822 (1974). Again, at this point, the Court is unable to undertake that analysis, because the reason for the policy has not yet been proffered. Therefore, this claim likewise requires further development.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the following official-capacity claims against Sheriff Daniel Edwards and Warden Heath Martin be allowed to proceed pending further development: (1) the claim that inmates are not provided useable writing implements; (2) the claim that trustees are allowed to perform their duties in a manner which exposes inmates to harm; and (3) the claim that inmates are not provided access to books.

It is **FURTHER RECOMMENDED** that all of plaintiff's other claims be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___25th___ day of April, 2022.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**